**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daymara Rodriguez, | No. CV-22-00081-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of her application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 14), the Commissioner's answering brief (Doc. 15), and Plaintiff's reply (Doc. 16), as well as the Administrative Record (Doc. 13, AR), and now affirms the Administrative Law Judge's ("ALJ") decision.

I.      Procedural History

Plaintiff filed an application for benefits on August 2, 2019, alleging disability beginning on December 25, 2007. (AR at 15.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels. (*Id.*) On March 4, 2021, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id.* at 15-25.) The Appeals Council later denied review. (*Id.* at 1-3.)

II.     The Sequential Evaluation Process and Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ

follows a five-step process.  20 C.F.R. § 416.920(a).  The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  At the first step, the ALJ determines whether the claimant has engaged in substantial, gainful work activity.  20 C.F.R. § 416.920(a)(4)(i).  At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment.  *Id*. § 416.920(a)(4)(ii).  At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404.  *Id*. § 416.920(a)(4)(iii).  If so, the claimant is disabled.  *Id.*  If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where the ALJ determines whether the claimant is still capable of performing past relevant work.  *Id*. § 416.920(a)(4)(iv).  If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience.  *Id*. § 416.920(a)(4)(v).  If not, the claimant is disabled.  *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (internal quotations omitted).  The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*  Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).  In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision.  *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III.   The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial, gainful work

activity since the alleged onset date and that Plaintiff had the following severe impairments: schizophrenia, depression, and anxiety.  (AR at 17-18.)  Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing.  (*Id*. at 18.)  Next, the ALJ calculated Plaintiff's RFC as follows: "[T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple work with no more than occasional interaction with coworkers, supervisors or the public."  (*Id*. at 20.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding (as discussed in more detail below) that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (*Id*. at 21.)  The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) Dr. Rubin, Psy.D., state agency psychological consultant ("persuasive"); (2) Dr. Mogrovejo, Ph.D., state agency psychological consultant ("persuasive"); and (3) Dr. Michael Dekker, D.O., treating provider ("not persuasive").  (*Id*. at 21-23.)  The ALJ also considered a third-party statement provided by Plaintiff's mother but deemed the statement "not persuasive" because "she is not an acceptable medical source and her statements regarding the severity and limiting effects of [Plaintiff's] impairments are not fully supported by the record as a whole, which includes treatment records, examination results, and opinions provided by acceptable medical sources."  (*Id*. at 23.)

Based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including (1) counter supply worker, (2) warehouse worker, and (3) cleaner.  (*Id*. at 24.)  Thus, the ALJ concluded that Plaintiff is not disabled.  (*Id*. at 24-25.)

IV.   Discussion

Plaintiff raises two issues: (1) whether the "RFC materially conflicts with [the] favorably-valued opinion evidence, leaving the decision without the support of substantial

evidence"; and (2) whether the ALJ improperly discredited her symptom testimony.  (Doc. 14 at 1.)  As a remedy, Plaintiff seeks a remand for a new hearing.  (*Id.* at 17.)

A. **The RFC Determination**

1. <u>Standard of Review</u>

"The ALJ assesses a claimant's RFC based on all the relevant evidence in the case record.  The ALJ must consider both the medical evidence and descriptions and observations of the claimant's limitations from the claimant's impairment(s), including limitations that result from the claimant's symptoms, such as pain, provided by the claimant, family, friends, and other people.  The RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate.  In other words, the ALJ must take the claimant's subjective experiences of pain into account when determining the RFC."  *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (cleaned up).  *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations."  *Biestek*, 139 S. Ct. at 1154.

It is the ALJ's province to translate and incorporate medical findings into an RFC. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)).  But "an RFC that fails to take into account a claimant's limitations is defective."  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  Similarly, where the ALJ employs a VE to ascertain whether work exists at step five, the ALJ's hypothetical questions to that expert must set forth all of the limitations supported by the record.  *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).

2. <u>The ALJ's RFC Determination And The VE Hypotheticals</u>

At the initial level of administrative review, Dr. Rubin opined that Plaintiff had

"marked[]" limitations in certain functional categories, including the "ability to understand and remember detailed instructions" and the "ability to carry out detailed instructions"; had "moderate[]" limitations in certain other functional categories, including the "ability to sustain an ordinary routine without special supervision," the "ability to work in coordination with or in proximity to others without being distracted by them," and the "ability to interact appropriately with the general public"; and had "[n]ot significantly limited" limitations in still other functional categories, including the "ability to carry out very short and simple instructions" and the "ability to get along with coworkers or peers without distracting them or exhibiting behavior extremes." (AR at 89-90.) Additionally, Dr. Rubin provided, in narrative form, various explanations concerning Plaintiff's limitations, including that she had the ability to "remember and understand simple (one to two step) instructions," "carry out one to two step instructions, follow simple work-like procedures, and make simple work-related decisions," and "adapt to an environment that is routine and predictable and where changes can be easily explained." (*Id.*) Dr. Rubin added that Plaintiff was "best suited perform to work with minimal social demands where interaction with others is superficial and occasional" and "appears capable of 1-2 step tasks with limited social demands and in a routine/predictable environment." (*Id.* at 90-91.) Another state consultant, Dr. Mogrovejo, adopted these limitations at the reconsideration level. (*Id.* at 105-06.)

The ALJ deemed the opinions of Drs. Rubin and Mogrovejo persuasive. (*Id.* at 22.) The ALJ also included non-exertional limitations in Plaintiff's RFC that were seemingly based on the limitations to which Drs. Rubin and Mogrovejo opined—specifically, the ALJ concluded that Plaintiff would be "limited to simple work with no more than occasional interaction with coworkers, supervisors or the public." (*Id.* at 20.)

During Plaintiff's hearing, the ALJ asked the VE whether jobs that exist in significant numbers in the national economy would be available for an individual of Plaintiff's age and education who had the non-exertional limitation expressed in the RFC— that is, an individual "who is limited to simple work requiring no more than occasional

1   interaction with co-workers, supervisors, or the public." (*Id*. at 44.)  The VE identified

2   three such jobs: supply worker, warehouse worker, and cleaner.  (*Id*. at 45.)  Plaintiff's

3   counsel then asked whether work would be sustainable for an individual "unable to

4   appropriately interact with co-workers and supervisors, resulting in an inability to correctly

5   communicate and at times, possible altercations, on an ongoing basis." (*Id*. at 46.)  The

6   VE responded that no work would be sustainable for such an individual.  (*Id*.)

7                              3.    The Parties' Arguments

8          Plaintiff does not challenge the ALJ's decision to discredit the opinions of her

9   treating provider, Dr. Dekker, or to credit the opinions of the state agency consultants, Drs.

10   Rubin and Mogrovejo.  Instead, Plaintiff argues that the ALJ's RFC determination conflicts

11   with the limitations expressed by Drs. Rubin and Mogrovejo.   (Doc. 14 at 13-14.)

12   According to Plaintiff, although those doctors concluded that she would be limited to

13   superficial *and* occasional contact with others, the RFC chosen by the ALJ only reflected

14   one of those limits—it limited Plaintiff to no more than occasional social interaction but

15   said nothing about superficiality.   (*Id*.)   Plaintiff further argues that a limitation to

16   superficial *and* occasional contact would be consistent with the disabling hypothetical her

17   counsel posed at the hearing—that of an individual who is "unable to appropriately interact

18   with co-workers and supervisors, resulting in an inability to correctly communicate and at

19   times, possible altercations." (*Id*.)  Plaintiff concludes that "full acceptance of Dr. Rubin's

20   opinion would be disabling" but "[a]t a minimum, the matter should be remanded for

21   clarification from a vocational expert to the extent that Dr. Rubin's opined limitations differ

22   from the hypotheticals presented by the VE." (*Id*.)

23          The Commissioner responds that the ALJ "reasonably translated" the findings of

24   Drs. Rubin and Mogrovejo "into a succinct RFC." (Doc 15 at 10.)  The Commissioner

25   argues that even if those doctors' opinions could be interpreted differently, as Plaintiff

26   suggests, this Court must defer to the ALJ's reasonable interpretation of the record.  (*Id*.)

27   Alternatively, the Commissioner argues that any error was harmless because none of the

28   jobs identified by the VE require any significant social interaction, as explained in the

1    Dictionary of Occupational Titles ("DOT").  (*Id.*)

2         Plaintiff replies that the ALJ did not provide any explanation for the omission of

3    "superficial" contact from the RFC, which is legal error, and that the DOT contains

4    conflicting information regarding the extent of social interaction required in at least one of

5    the jobs identified.  (Doc. 16 at 2.)  Especially noteworthy, Plaintiff argues, is the

6    description of the counter supply job, which involves "working in settings where service

7    to patrons was provided (like cafeterias)."  (*Id.*)  Plaintiff argues that if the superficial-

8    interaction limitation were taken into account, and "[w]ith proper development of the

9    record with vocational expert testimony, it is possible that there would be no work in

10   significant numbers." (*Id.*)

11                    4.    <u>Analysis</u>

12        Plaintiff has failed to establish that the ALJ committed harmful error when

13   formulating her RFC.  As an initial matter, it is not clear that *opined* that Plaintiff would

14   need to be limited to work where social interaction with others was only superficial and

15   occasional.  The sole mention of the term "superficial" appears in a portion of the

16   assessment form where Dr. Rubin was asked to describe, "in narrative form," Plaintiff's

17   social interaction capacities and/or limitations.  (AR at 90.)  In response, Dr. Rubin wrote:

18   "[Plaintiff] *would be best suited* to work with minimal social demands where interaction

19   with others is superficial and occasional."  (*Id.*, emphasis added.)  Identifying the job for

20   which a claimant is "best suited" is not the same thing as opining that the claimant would

21   be unable to perform any other job whose demands deviate, in any way, from the demands

22   of the best-case-scenario job.  *Cf. Rounds*, 807 F.3d at 1006 ("An ALJ may rationally rely

23   on specific imperatives regarding a claimant's limitations, rather than recommendations.").

24        This understanding is consistent with the other portions of Dr. Rubin's assessment

25   form.  When assessing Plaintiff's limitations in various social interaction abilities, Dr.

26   Rubin assigned Plaintiff "moderate" limitations in her ability to interact appropriately with

27   the public and in her ability to accept instructions and respond appropriately to supervisory

28   criticism.  (AR at 90.)  A "moderate" limitation still amounts to a "fair" ability—*i.e.*,

between a "slightly" limited and "seriously" limited ability—to perform a task.  20 C.F.R.,
Pt. 404, Subpart P, App. 1, § 12.00(F)(2).  So, by Dr. Rubin's own terms, Plaintiff retained
some ability to interact with the public and accept instructions and respond to supervisory
criticism.  Dr. Rubin also opined that Plaintiff was "[n]ot significantly limited" in her
ability to "ask simple questions or request assistance," "get along with coworkers or peers
without distracting them or exhibiting behavioral extremes," and "maintain socially
appropriate behavior and . . . adhere to basic standards of neatness and cleanliness."  (AR
at 90.)  Against this backdrop, it was rational for the ALJ to conclude that Dr. Rubin's
opinions were consistent with the non-exertional limitation ultimately set forth in the
RFC—*i.e.*, that Plaintiff would be "limited to simple work with no more than occasional
interaction with coworkers, supervisors or the public."  (AR at 20.)  And as the Ninth
Circuit has repeatedly emphasized, "[w]here evidence is susceptible to more than one
rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*,
400 F.3d 676, 679 (9th Cir. 2005).

Although these conclusions, alone, provide a sufficient basis for rejecting Plaintiff's
first assignment of error, the Court also notes its disagreement with Plaintiff's contention
that Dr. Rubin's opined-to limitations were consistent with the hypothetical that Plaintiff's
counsel posed to the VE during the hearing.  That hypothetical addressed an individual
with a complete inability to "appropriately interact with co-workers and supervisors" and
"correctly communicate," resulting in "at times, possible altercations, on an ongoing
basis."  (AR at 46.)  This is far more restrictive than the limitations Dr. Rubin described.
As discussed, Dr. Rubin repeatedly noted that Plaintiff retained *some* ability to interact
with co-workers and supervisors.

Finally, although the Court finds no error in the RFC formulation for the reasons
stated above, the Court also agrees with the Commissioner's fallback argument that any
error was harmless.  Even assuming, for the sake of argument, that the ALJ should have
modified Plaintiff's RFC to limit her to only "superficial" social interactions, the DOT
listings for the jobs the VE identified during step five do not require more-than-superficial

social interactions.  The Commissioner cites the worker function rating by which the DOT quantifies a job's relationship to "data, people, and things."   DOT, *Parts of the Occupational Definition*, 1991 WL 645965.  These ratings comprise the fourth-through-sixth digits of the DOT code corresponding to any job.  *Id.*  "As a general rule, Worker Functions involving more complex responsibility and judgment are assigned lower numbers in these three lists while functions which are less complicated have higher numbers."  *Id.*  For the DOT codes corresponding to the three jobs the ALJ identified, the worker function relating to people (the fifth digit of the code) is 8, which denotes that the job only requires "Taking Instructions-Helping."  DOT, *Counter-Supply Worker*, 319.687-010, 1991 WL 672772; DOT, *Laborer, Stores*, 922.687-058, 1991 WL 688132; DOT, *Last Cleaner*, 788.687-082, 1991 WL 681191.  This is the lowest worker function rating relating to people.  *Ackley v. Astrue*, 2011 WL 4369119, *6 n.3 (D. Or. 2011).  It involves "[a]ttending to the work assignment instructions or orders of [the] supervisor.  (No immediate response [is] required unless clarification of instructions or orders is needed.) Helping applies to 'non-learning' helpers."  DOT, *Appendix B - Explanation of Data, People, and Things*, 1991 WL 688701.  In other words, the jobs the VE identified involve the least responsibility and judgment with respect to social interaction.  Plaintiff notes that one of the positions identified by the VE involved working in an environment where patrons would be present.  (Doc. 16 at 2.)  But there is no indication that job would require more than occasional and superficial interaction with those patrons.

The Court will not reverse for harmless error, and "[t]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (superseded by rule on other grounds) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).  Plaintiff has not made the required showing here.

…

…

…

1      B.      **Symptom Testimony**

2             1.      <u>Standard of Review</u>

3             An ALJ must evaluate whether the claimant has presented objective medical

4      evidence of an impairment that "could reasonably be expected to produce the pain or other

5      symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citations

6      omitted).  If so, "an ALJ may not reject a claimant's subjective complaints based solely on

7      a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400

8      F.3d at 680.  Instead, the ALJ may "reject the claimant's testimony about the severity of

9      [the] symptoms" only by "providing specific, clear, and convincing reasons for doing so."

10     *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015).

11            2.      <u>The ALJ's Evaluation Of Plaintiff's Symptom Testimony</u>

12            The ALJ concluded that Plaintiff's statements regarding the extent of her symptoms

13     "are not entirely consistent with the medical evidence and other evidence in the record for

14     the reasons explained."  (AR at 21.)  The ALJ acknowledged that the evidence supported

15     the existence of severe mental health impairments but emphasized that "the record does

16     not support a finding that [Plaintiff] is limited to the extent alleged."  (*Id.*)  The ALJ

17     elaborated:

18             The undersigned notes that the claimant began her testimony at the hearing
       with emphatic responses as to why she was unable to work, with allegations
19             that included difficulties with concentrating, difficult [*sic*] with
       understanding and following instructions, and difficulties with interacting
20             with others.  However, the record is clear that the claimant has never even
       attempted to engage in any kind of work, so the basis for the claimant's
21             certainty that she could not function in a work setting is unclear.  However,
       her desire to not work is reflected in a number of places in the record
22             including Exhibit B9F/5 where she indicates that she "is not interested in
       working at this time" and Exhibit B2F/53 where she indicates that she will
23             be staying home to take care of her children.

24     (*Id.* at 21.)  The ALJ also supported the adverse credibility finding by cross-referencing the

25     discussion of the medical evidence at step three:

26             As discussed above in the "paragraph B" criteria analysis, the undersigned
       finds that, despite the claimant's subjective allegations, the overall record
27             supports the finding that the claimant has no more than moderate limitations
       in the broad areas of functioning.  These findings are consistent with the
28             claimant's reported activities of daily living as well as available examination

results and observations and reports made by providers. (Exhibits B4E; B9E; B1F; B2F; B4F; B5F; B7F; B8F; and B9F).   These records support and are consistent with the limitations defined in the residual functional capacity, which addresses the moderate limitations in the broad areas of functioning. However, they do not fully support the claimant's subjective functional allegations to the extent alleged.

(*Id.* at 21-22.)  Finally, regarding Plaintiff's desire to work, the ALJ explained:

[D]uring a March 6, 2019 visit, the claimant reported that she no longer wanted to participate in job development services because she was "going to be staying at home to take care of her children while her mom went to work at Fry's." (Exhibit B2F/53).  This reporting by the claimant undermines the reporting provided by . . . the claimant's mother, as well as the reporting by the claimant in the respective function reports, (Exhibits B4E and B9E), where the claimant and her mother both reported that [her mother] "help[s] [the claimant] take care of the kids."  (Exhibits B4E/2 and B9E/2).   The claimant's reported intent to no longer participate in job development services because she was going to be staying at home to take care of her children while [her mother] went to work demonstrates that the help, while undoubtedly appreciated, was not essential.  A later note from August 30, 2019 shows that [her mother] was still working and that the claimant had been tending to the children, helping to feed everyone, and helping with homework.  (Exhibit B2F/65).  It appears, based on the claimant's reporting, that she is able to function at a higher level than alleged as demonstrated by her ability to not only perform her own activities of daily living independently but also take care of her children and "helping to feed everyone."  This conclusion is similar to that made by the ALJ in his decision on the prior application.

(*Id.* at 22.)

### 3.   The Parties' Arguments

Plaintiff argues that the ALJ misinterpreted her comments regarding not wanting to work.  (Doc. 14 at 16.)  Plaintiff explains she made those statements after diligently pursuing part-time work opportunities for months. (*Id.*)  Plaintiff also argues that the ALJ's rationale as to other reasons for the adverse-credibility finding—*i.e.*, she must not be disabled because she can independently care for her children—is flawed because the issue is Plaintiff's inability to function outside the home without her mother present.  (*Id.* at 16-17.)  Finally, Plaintiff argues the ALJ's reference to "inconsistent exam results" is insufficiently specific.  (*Id.* at 17.)

The Commissioner responds that the ALJ properly discredited Plaintiff's symptom testimony based on its inconsistency with examination results and reports from providers

and argues that the ALJ's conclusions on this point were sufficiently specific because they must be understood as cross-referencing an earlier, lengthier discussion of the evidence. (Doc. 15 at 7.)  The Commissioner continues: "[T]he ALJ's citations referred to 18 separate treatment visits (mostly with Dr. Dekker) in 2019 and 2020, all of which showed that Plaintiff denied hallucinations, had a euthymic mood with infrequent depression or anxiety, [and] fair judgment and fair concentration . . . [and] reasonably found these examinations inconsistent with claims of total disability."  (*Id.* at 8.)  Separately, the Commissioner contends that the ALJ incorporated an earlier discussion of Plaintiff's daily activities, which included providing for her children.  (*Id.* at 9.)  Finally, the Commissioner notes that Plaintiff made numerous statements indicating her intent to stay at home instead of work. (*Id.* at 9-10.)

In reply, Plaintiff accuses the Commissioner of failing to address the explanation in her opening brief for her statements regarding not wanting to work and argues that the Commissioner has thus waived any argument as to that issue.  (Doc 16 at 3.)  Plaintiff also contends that the Commissioner repeated the ALJ's erroneous conclusion that Plaintiff's ability to provide childcare meant she could work and failed to identify which clinical findings undermined her statements.  (*Id.* at 3-4.)

### 4.   Analysis

The Court finds no harmful error in the ALJ's evaluation of Plaintiff's symptom testimony.  Although the ALJ may have been incorrect in stating that Plaintiff has never worked in any capacity,[1] an ALJ may still consider a "spotty" work record when evaluating a claimant's credibility and symptom testimony.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) ("The ALJ gave specific, clear and convincing reasons for discounting Ms. Thomas' testimony.  In addition to finding no objective medical evidence to support Ms. Thomas' descriptions of her pain and limitations, the ALJ found that Ms. Thomas had an 'extremely poor work history' and 'has shown little propensity to work in her lifetime,'

---

[1]    Plaintiff's treatment records reference a work training program at a retail store that Plaintiff attended "for several weeks" in 2009.  (AR at 437.)

which negatively affected her credibility regarding her inability to work.   Ms. Thomas'
work history was spotty, at best, with years of unemployment between jobs, even before
she claimed disability in June of 1993.").   It was rational for the ALJ to conclude that this
factor undermined Plaintiff's credibility—Plaintiff's work history is essentially non-
existent and the ALJ noted various statements in which Plaintiff expressed that she had no
desire to work.   (AR at 21, citing *id.* at 471 ["Member [said] they no longer wanted to
participate in JD services.   Member is going to be staying at home to take care of her
children while their mom went to work at Fry's.'], 658 ["Daymara expressed she is not
interested in working at this time."].)   Although Plaintiff attempts to justify these
statements by explaining that she made them after failed attempts to find a part-time job,
she cites no authority for the proposition that it was impermissible for the ALJ to consider
her decision to stop looking for work as a negative credibility factor.   And as discussed, a
lack of motivation to work *is* a permissible consideration when assessing symptom
testimony.   *Thomas*, 278 F.3d at 959; *see also Butler v. Saul*, 785 F. App'x 389, 390 (9th
Cir. 2019) ("The ALJ reasonably considered the fact that [the claimant] stopped working
for reasons other than her disability.").[2]

Another of the ALJ's reasons for discrediting Plaintiff's symptom testimony was
that it was inconsistent with her "available examination results and observations and
reports made by providers."   (AR at 22.)   Such inconsistency can serve as a permissible
reason for discrediting a claimant's symptom testimony under Ninth Circuit law, at least if
(as here) combined with other valid reasons.   *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th
Cir. 2022) ("Claimants like Smartt sometimes mischaracterize [Ninth Circuit law] as
completely forbidding an ALJ from using inconsistent objective medical evidence in the
record to discount subjective symptom testimony.   That is a misreading of [Ninth Circuit

---

[2]     There is no merit to Plaintiff's argument that the Commissioner waived any
argument on this issue by not addressing her explanation for these statements in her
opening brief.   (Doc. 16 at 3.)   The Commissioner adequately responded to Plaintiff's
arguments on this issue by citing various authorities establishing that the ALJ properly
"considered Plaintiff's work record . . . as a further basis for rejecting her claims that she
was out of the workforce because of her impairments."   (Doc. 15 at 9.)

law].  When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.  We have upheld ALJ decisions that do just that in many cases."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

The ALJ's conclusion on this point was also adequately explained and supported by substantial evidence.  Although Plaintiff questions the specificity of the explanation provided in the portion of the decision setting forth the negative credibility finding (Doc. 14 at 17), in context it is clear that the ALJ was cross-referencing the "paragraph B criteria analysis" at step three, in which the ALJ cited Plaintiff's ability to perform independent daily activities, her "normal, unremarkable, or mild" mental status results, her "alert, polite, and cooperative" presentation to treatment providers, and her testimony that she has "never been fired or laid off from a job because of problems getting along with others."  (*Id*. at 18-19.)  Such cross-referencing is permissible.  *Thompson v. Kijakazi*, 2021 WL 6101346, *1 (9th Cir. 20210) ("Although the ALJ's explanation of her decision not to list Thompson's migraines under Listing 11.02 was minimal, the ALJ nonetheless assessed Thompson's migraines at length—she simply did so under a separate heading, which is acceptable.") (citation omitted).  And in the cross-referenced portion of the decision, the ALJ cited "available examination results, which routinely indicate[] normal attention span and concentration," throughout Plaintiff's primary care and mental health treatment records.  (*Id*. at 19.)  These conclusions are supported by substantial evidence.  (*Id*. at 406, 420, 426, 433, 511, 571, 646, 659.).[3]

---

[3]     Because the ALJ identified multiple clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's symptom testimony, any error in the ALJ's other reasons for discrediting that testimony was harmless.  *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) ("Because we conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and terminate this action.

Dated this 12th day of July, 2023.

_____
Dominic W. Lanza
United States District Judge

---

whether the ALJ's reliance on such reasons was harmless error. . . . [T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error. . . . Here, the ALJ's decision finding Carmickle less than fully credible is valid, despite the errors identified above."). Thus, it is unnecessary to address Plaintiff's challenge to the ALJ's reliance upon Plaintiff's reported daily activities, including childcare.